Arguments not to exceed 15 minutes per side. Mr. Demoisie, for the appellants, you may proceed. May it please the court, Mr. Pryor.   Your Honor, I have asked to reserve five minutes for rebuttal. Thank you. I'm here on behalf of representing Eley Lopreato and Susan Taylor. I'm here because they chose to step forward to bring this kind of discriminatory practice to light. They could have settled and chose not to. They knew that they were going to be hammered. They knew they were going to be vilified. But in terms of what they had gone through and what they had seen like and similar persons go through, they wanted to make this a public question. And the public question is, when you are disabled, in this case you have an addiction, and you have fought that addiction and gone through an appropriate state-run, recognized rehabilitative process. And in that process, they allow you to be licensed again. They allow you to practice. And as you go through recovery, they modify the overall restriction in terms of scope of practice. By the time this incident arose, both Eley and Susan, while had restricted licenses in the sense that they were required to still have their supervisor report and still do random drug tests. Their scope had been virtually eliminated in terms of their scope of practice. In this circumstance, they ran into an interesting situation. The defense, as I understand it, is primarily two things. One, that in the interview process, Select did not know that they had this disability. And two, they were rejected on a neutral, non-discriminatory business practice. The court below agreed with that and granted summary judgment. We take issue on both. The first as to this neutral hiring practice. The court noted that Weed had not gone towards the disparative impact and only gone towards disparative treatment. Is that true? It is, unfortunately. It seems more like a disparate impact than a disparate treatment case. That's on me. I thought it was there, and it wasn't. But, I'm sorry? Your conclusion in your reply brief is kind of strong, where you compare it to discriminating against people with gray hair or discriminating against people who attended an all-female university. It candidly seems strong to me, but on reflection, those are disparate impact arguments, aren't they? Well, I think even if you go the disparative treatment, at some point when they take the position that it is, by definition, a neutral hiring practice. Gray hair is neutral. I mean, gray hair is neutral, but it has a disparate impact on old people. Well, I mean, my point is It's not a good reason for discriminating against people with gray hair. Well, it's a way to get around old age discrimination. I understand, but that's a disparate impact claim, isn't it? It's a disparative treatment when you go past to the next step, when they present it and we're allowed to go back and attack the pretext of it. And the pretext is, if you understand the licensure environment here, is that there are many types of restrictions in licensure. And some of them have to do with competency. Some have to do with limitations in terms of your expertise. Some even have terms as to location. And you can have a neutral practice by saying, we're not going to take people with restrictions. A lot of those restrictions would be perfectly reasonable. They would be perfectly reasonable. Like whether you steal drugs and things like that. Well, here's my point, though. The difference between the Hernandez case and where we are today is that the EEOC finally got around to actually classifying people who are in drug rehab or have graduated from drug rehab as being, you cannot exclude them from being a qualified. What is your best evidence that select knew that these people were addicted, as opposed to knowing that they had stolen drugs from their previous employment? Okay. Well, the first thing I would say is the stolen drugs part only came after the litigation. Because if you look at what they're saying, they're saying we didn't know what you were talking about. They didn't say anything about a care program. They didn't say anything about recovery. Because they're saying we eliminated them based on their omission of restriction. That whole thing about stealing drugs thing came later. That wasn't even a part of this as I understand it. It was simply because. The first half of my question, what is your best evidence that select knew of what you're claiming as a disability, namely drug addiction? Best evidence was Ellie's and Susan's testimony, what they talked about to Ms. Sparks, number one. They said they talked about the care program, that they were in the care program. But my recollection is that they denied saying that they had addiction problems. They did. That is absolutely accurate. They thought this lady, because she was a human resource person, would know what the care program was. But it doesn't matter what they thought she would know. If you're going to hold the employer liable here, you have to show that the employer did know. And so my question is, what is your best evidence that the employer did know? That would be my second piece. That would be Ms. Theresa Schneider-Eubanks. She holds a very interesting point here. In that turnover from Cardinal Hill to Select, Select selected her, she was at that time the Director of Nursing, to be the person who would select the best nurses in the changeover while Select was doing its due diligence. She was told that she would be the clinical director over the change, which, in fact, she later ended up being. So you have a circumstance where Ms. Eubanks is actually functioning at the direction of Select in terms of making that process. And she knew everything about this. She was the one who was coordinating between Ellie and Susan to the Kentucky Care Program. And she tried to tell. She told Ms. Alexander. Ms. Alexander was the buffer to Ms. Burkett, supposedly the person who made the decision, although at one time she said it was just based on restrictions. And then later she started beefing up her affidavit to say there was more to it. The question, where did that subsequent information come? But Ms. Eubanks was in a position. She was a de facto employee of Select at that time. And she knew everything. And she tried. Did she make the employment decision? She couldn't. Well, that's a great question. She made the selection. And everybody that she selected got hired who wanted the job except Ellie and Susan. Did she make the employment decision? Not the final decision, no, ma'am. What is the best evidence that the person or persons making the final employment decision, in fact, knew of the claimed disability? I've given it to you, Judge. I think that they built a lot of walls around not to know. They didn't want to know. They did rely on recidivism, though. Well, there's a question about that. But at some point, what came back from Ms. Burke? I mean, I think that helps you, though, right? It does. They relied on it, or does it, to say is recidivism contained within it, the idea that they considered her to be a drug addict? The testimony Ms. Eubanks gave was that the answer she got back was there was recidivism issues. And I think one quote was, we've been burnt by people like that before. You say that, and you point to a piece in the record. But I looked and looked and looked, and I couldn't find that statement anywhere. So where is that? My recollection is that it is in her deposition, which we asked to be made a part of this. That's my recollection. Her deposition or her statement? I'm sorry, her statement. All right. So that is not actually part of the record, but I read that entire thing. And it's not there. So if it's not in that statement, where is this we've been burned before, where would I find that? If it's not in the record, ma'am, I've heard it and I believed it was in the record. If it's not there, then we can't rely on it. What about the word recidivism all by itself? I'm sorry, sir? What about the word recidivism all by itself? That is in the record, right or not? Yes. And why is that or is it not? I guess this is what it comes down to, an indication or a code word for drug addiction. Because that is a, when you get into that field, one of the big issues is recidivism. Well, but recidivism could also be stealing drugs. It could be. Or it could be just people who have problems are likely to have more problems. I mean, we reject that in court when we disallow propensity evidence, but employers and other people rely on that kind of hiring decision all the time. You know, you plagiarized once, you may plagiarize again, that kind of thing. And that is possible. But it is also most applicable in this arena to people who relapse. Well, I understand, and I understand that I gather that the act would preclude discrimination against people that you considered to be latent drug addicts, I guess, or cured drug addicts. But I'm just wondering whether recidivism is enough to provide evidence for that kind of discrimination other than on a disparate impact basis. I guess that's where, if you could address that, that would get to the heart of the case, I think. The only look back we have on that is that when we took Ms. Burkitt's deposition, originally we thought the whole thing was just on the basis of they had restrictions. But when she testified – Well, but that's the same idea. You get restrictions for a reason, and you don't want to have to give restrictions in the future, so we don't take people who have restrictions because that's – Well, the problem is that runs directly into ADA, because you can have – I think that goes to the ADA on a disparate impact basis. I'm not sure it goes to the ADA on a disparate treatment basis. That's the whole problem. I think it's a pretext, though, of this argument, even under the treatment side. When you go down, the pretext is that this is actually neutral. If it were actually neutral and you were trying to comply with the ADA regulation that had just come out, which, by the way, they ended up settling without us knowing and posting that they had agreed to do that. We think in the same case. But in terms of that, you could carve out an actual appropriate legal neutral – What did they post? I'm sorry, what? You said they ended up posting something. What did they post? Right before the taking of Ms. Sparks' deposition, a friend of Ellie's sent us a picture of a settlement posting on the bulletin board at Select Hospital that said that Select Hospital had settled with EEOC and they were going to comply with not discriminating against people who were in drug rehab centers and things of that nature. How does that help you? You said at the outset you brought this case to solve a problem. It sounds like the problem is being solved. It didn't really solve it. Because when I went to look at it, I couldn't understand why when we took Ms. Sparks' deposition, how she didn't know of it. And then I realized what it was. That particular hospital is a subsidiary of Select, the mothership, and it only applied to that one sub-entity. So they admitted in the sub-entity – What's the relevance of it then? The relevance of the agreement? I thought you were relying on that photograph to show that, in effect, they conceded your point. They did. But it isn't that Select conceded it. It's just this one subset that conceded it. That's what it appears to be. But, you know, the problem is that that subset is the subset that Ellie and Susan were in. But in terms of complying on a larger basis, while they settled in one small venue, they still deny in the larger venues. Counsel, you'll see that your red light is on, and we will give you your rebuttal time. Thank you, ma'am. Thank you. May it please the Court. My name is Patty Pryor, and I represent the appellee's defendants here, Select Medical Hospital and Select Specialty of Northern Kentucky. We respectfully request that this Court affirm what the lower court did. We think the lower court got it right for all those same reasons, and also for the reasons the district court hinted at but decided to defer, which is that they were not disabled, and they hadn't shown that anyone at – even if they were disabled, they hadn't shown that anyone at Select knew they were disabled. I'll take the easy part first, which is there's no evidence of pretext here. They've admitted in all of their briefings that there was a neutral policy in place. There's no evidence that anyone who had a restriction for any other reason was hired. The Supreme Court has been very clear in the Raytheon case, which we cited, that if there's a neutral policy on a no-hire like that, that's the quintessential spoke of a legitimate reason, and that alone, unless there's been someone that's been shown differently, that alone shows there wasn't. It does seem to be sort of a trick if you assume that you're not allowed to discriminate in hiring against people who are recovering from drug addiction. Can we assume that, at least? They're perceived as potential drug addicts who are in recuperation, but they perceive that as a disability, or they meet the requirements for perception under the disability definition. If they meet the requirements, correct. Then there's a category of people, which roughly speaking is drug addicts who are currently not on drugs. Sure. You can't discriminate against them under the ADA, let's assume. Sure. How can you circumvent that by taking a category which is somewhat larger than that and just saying we're not going to hire them out, which includes all of them or virtually all of them and a few other people that you'd like to exclude as well, for whom it makes even more sense to exclude, and you just say we're going to exclude that whole group? It sure looks like a tool to discriminate against those people that you just conceded, at least for purposes of argument, that you can't discriminate against. Are you with me? I understand your point. To me, that's the core of this case and what's troubling about it. Okay. If I can respond to it, Your Honor, I think first and foremost, this case is only a disparate treatment case, and the Supreme Court in the Raytheon case was very clear about that too. There are two separate claims, disparate impact and disparate treatment. If you only bring the disparate treatment, then that's what we're here on. There isn't a disparate impact payment for you, and the Supreme Court was also clear. But when you're talking about gray hair or something, you're talking about something which includes other things that seem irrelevant, whereas this is a category that seems very focused on this particular kind of discrimination. The evidence of the record is actually that this category is actually very broad, and there's no evidence to the contrary, that in the restrictions of a nursing, it can be for patient abuse. It can be for just poor conduct. Yes, it could be for drug diversion, which is what it was for here. The difference is it does not discriminate against anyone who was in rehab. If these nurses had voluntarily come forward and said, you know what, I've got a drug abuse problem, I'm going to step aside for a minute, I'm going to get help and come back, there's no evidence of the record that they would have had restrictions placed on them by the nursing board. With the nursing board in this care program, you'll see it in the appellant's papers, they call it an alternative to discipline. So in other words, in this case, these two went through it because they were both caught stealing drugs from dying patients. They were stealing drugs, their employer caught them, and they both testified. The reason they went there was not, I need to get clean and I need to fix. The reason they went to the care program was the only way to save my nursing license is to claim I am disabled and that I have a drug addiction, because otherwise the act of me stealing the drugs kills my nursing license. That's why they went to the program. And that's why they have restrictions placed on them, because it's an alternative to discipline under the nursing license. You mean they could have gone to the program without having restrictions put on them? I don't know. My understanding of the program, at least the record evidence of the program, is that it's an alternative to discipline. They can get help by any other rehab program there is. You didn't answer my question. Yes. Is that because it's not the answer? No, I don't. Your answer suggests that they could go to care without having restrictions put on them. I don't know that. It was all in the same bundle. When you go to care, you have restrictions. Well, I think, at least how it's been phrased to me by the plaintiff's counsel, I'm not an expert on care, and there isn't record evidence on further information about care. But the way the plaintiff's counsel has posed it is it's an alternative to discipline. And so it would be used in an alternative to discipline. You mean an alternative to restrictions? I mean, you can have restrictions without being disciplined in common parlance, and maybe in this scheme you can't. That's what I'm asking. I apologize. I think I lost your last question. The basis for discrimination is whether you've had restrictions, right? You're suggesting that there's a lot of people in care who don't have restrictions because they went to care voluntarily. I'm asking if there's record support for that, and you say you don't know. No, no, no. I mean, I don't understand. Yeah, no, I apologize. No, I don't know if you can go to care without getting restrictions. You can go to. Can you assume that you can't go to care without restrictions? I don't think without record evidence we should. But I think the point is you can get help from other rehab programs. This is just a program set up by the state to help nurses who have gotten into trouble. This is licensure. It's licensure. Yeah, it's a licensure thing. It's not. There's plenty of other rehab programs. If someone wanted to go get rehab that would not affect their license, they could do it on a basis because they haven't engaged in misconduct to begin with. These two engaged in misconduct to begin with. You did start your argument with the scenario that had these women just voluntarily, these nurses just not stolen the drugs but said, I have a drug problem and gone to treatment, that all would be well. If they had never had restrictions on their license, yes. They would never have gotten involved. I mean, that's sort of implicit in Judge Rogers' question is you're suggesting that that scenario would have never included restrictions on the license. I believe that if they went through a regular rehab program, I don't believe it necessarily. As opposed to care. As opposed to care, which is an alternative to discipline. Okay. My point being that it's not every drug addict does not get stuck in this restriction thing. It's not designed for that. It's designed for who's been disciplined by the nursing license already. You only have to focus on these particular plaintiffs and their situation. And theirs involved licensing restrictions. Correct. For whatever reason. Correct. And the employer had a neutral policy that said licensing restrictions, we're not going to hire because we don't have the staff to monitor them. We have very sick people who can't communicate to us if they're not being handled correctly. And so for those reasons, they have this in place, whether it's because of patient abuse, whether it's because of misconduct. Not people who have licensing restrictions. They're just people who had them in the previous. These two had license restrictions still at the time. And had. I mean, they still were under license restrictions. I thought the basis for not hiring them was that they had them ever. Their policy is had them ever, they won't hire them. Yes. But at the time that these two were considered for rehire. Yes. For hire. They were never. Well, hire by select. Correct. They were still employed by the other one. By a different company. Right. At that time, they did still have some restrictions on their licenses, did they not? Correct. Correct. They had restrictions on how many hours they could work. They had restrictions on the suspension of narcotics. They needed to have people on staff there. And they had to be supervised if they were working at night, which both of these individuals at the time were night workers. So they still had restrictions on them. And they, my recollection is that they responded in a way that didn't really make that clear to the question. Yes. And on their application, they, no. So, of course, the application asked right up front, do you have restrictions? Clearly showing, not asking, have you ever had a drug problem? Have you ever had counseling? It's, do you have restrictions? And they answered yes, but they said, but not currently. And that was wrong. And they testified they talked about that and decided that's how they would answer to try to help their cause. You didn't not hire, you didn't decline to hire them based on having lied on their applications? No. That would have been a whole different case. They did not hire them because they had restrictions and that's how they. . . Had had restrictions. They had or had had. It did not matter. Their policy was if you had or had had restrictions, they did not hire them. And they applied it here, very neutrally. So it's not, for a disparate treatment case, which is the only claim before the court, you can't, as long as you're applying it neutrally and fairly to everyone, which they agree they are, it can't be a disparate treatment case. There's no evidence that we picked on them. We treated them exactly the same as someone who had stolen something from a patient and had restrictions on their license or had discipline on their license from the. . . We treat them exactly the same. And the fact that they are drug addicts who are now claiming to be drug addicts should not give them a step up above someone who just engaged in other misconduct too. Right? It's the same across the board. And that's why, under the Raytheon case, and I think it's indistinguishable, this should be affirmed on that case. I also think it should be affirmed that they were not disabled. Drug addiction alone is not a disability. Using drugs or taking drugs is not a disability. What they have claimed, they claim were drug addicts. But you still have to be substantially limited in a major life activity. That's still part of the test. And when I asked them in their deposition about that. . . You're getting back to whether they were disabled. Whether they're disabled. The only basis that really carries much purchase with me is this perceived as or regarded as or whatever. Okay. Isn't there a law that says you're regarded as a former drug addict if that's the way they're regarded? If that's regarded as something that is life-disabling, even if it really isn't, that's enough? Only if. . . First of all, there's no evidence that anyone regarded them as a drug addict. Oh, but now you're not answering the question. I'm getting to that category. That category would be disabled, right? You just admitted it a little earlier. You can't discriminate against someone because of a drug. They're claiming they are a drug addict, so it wouldn't be false for them to say they're a drug addict. You could say you're discriminating against me because you regard me as a drug addict even though I'm not. But they say they are a drug addict. If I regard someone. . . That's even stronger. I'm a drug addict and you regard me as a drug addict. Then your regarding is enough under the cases. . . Only if I take action against you because of that. Well, that's the next issue. But I thought you were saying that they weren't disabled. No, I don't believe they are disabled. There's no evidence that anyone regarded them. You can't say they're disabled based on whether they're discriminated against on the basis of disability. If they regard you as disabled, then you're disabled under the statute. Then you look to see whether you've been discriminated against. If someone at select had believed they were a drug addict, but there's no evidence anyone at select believed they were a drug addict, what they understood was they had restrictions on their license. Both plaintiffs or appellants testified. But that's the issue. But there's no evidence to show that they actually had knowledge of that or thought you were a drug addict. They thought you have restrictions. We don't care why. We do not care why. The answer is that drug addiction can be an impairment, but inasmuch as these nurses testified that it did not limit them in any major life activity, that that's why they don't benefit from the disabled, which is the unlawful part. I don't know if I'm close on that. No, I think that's absolutely right. Yes, it's an impairment like any other condition. But it still has to have a substantial limitation. It did not. And to the regarded as claim, it has to be. But even though you regarded them as disabled, you still would not be able to be permitted to discriminate against them on the basis of what you regarded their disability as being. Absolutely. But my question earlier was relative to the record evidence of who knew what when with regard to these two. And I've struggled to find actual evidence that anyone making a hiring decision actually knew of this addiction or knew enough to regard them as having an addiction. That's exactly right. They were very clear. Both of the individuals were very clear in the deposition that they did not communicate to anyone that they were a drug addict. They did not communicate to anyone that they were in the care program because of drugs. They were very clear on the testimony. I think we've cited that in the record. In addition, he refers to a Teresa Schneider Eubanks. Teresa Schneider Eubanks was told, and he said she knew everything. Her understanding was that Ellie Lupriotto told her that I took drugs home but I never used them. So she didn't believe they were a drug addict. She believed that she got caught and she even testified, entered into the program in order to save her license and so had to say she was addicted. Can't you get to the impairment of addiction just by virtue of having been in the care program? And regarded as impaired. An addict is always an addict, right? If you're a drug user. But oh, Lupriotto wasn't a user. According to Teresa Schneider Eubanks, she was not a user. She had just stolen drugs. But that doesn't matter if you're only looking at the question of how she was regarded. And so I think perhaps Judge Cook's question is the same as mine, which is might not it be the case that anyone who is in the care program is going to be regarded as having an impairment probably in the program because they have drug problems. If anyone had any idea that the care program was just related to drugs, possibly, but you're dealing with individuals. So the human resource person was from Alabama. She testified she'd never heard of the care program. She heard them say the care program. She didn't know what that meant and she didn't know what it referred to, and she didn't care because it didn't matter for her purposes, restrictions are restrictions, done. So there isn't an each person I asked, did you explain what the care program was? No. No one told Select. Select was coming from out of town. They were not Kentuckians. They did not know what the care program was or that it necessarily meant they were in there for drugs and no one told them and they never asked. So they didn't have any knowledge that you could even begin a regarded as claim because there isn't any knowledge on the part of Select, the employer. There's no knowledge on their part that they were in there for drugs to begin with or that they were in there for drug abuse or addiction as opposed to just in there because they had stolen drugs maybe to give to someone else, maybe to do something else with it, or in there for other misconduct. And there's no record evidence, and on summary judgment, they've got to have some record evidence. I want to shift a little bit. I see your time is up. I'm still a little hung up on this idea that it could be used as a tool for unlawful discrimination. Let's say that, and the answer generally given by you in the briefs is that no, that's a disparate impact case rather than a disparate treatment case. But what if you had, for instance, a person who was given restrictions because of her age? They said people over 55 aren't allowed to, I don't know, fill out or to deliver prescriptions or something like that, something that would be discriminatory. But there's only one or two people that it's ever been applied to, and now that person applies for a job and they say, well, you had restrictions, it's gone. It's hard to make a disparate impact claim. There's only one or two people it's ever affected. But it sure seems like there ought to be relief in that case. It should not be relief in that case. I mean, it seems like it's just by dividing the discriminatory decision between the discriminating licensing people and the decision makers, or by combining two parts of each of their decision, it seems to protect against discrimination that's against the statute. Are you with me? So in the example that you gave, if a state licensing board said we're going to place restrictions on you because of an age, it's the state licensing board that then has made a decision based on age. It's not the employer. And so it's the state licensing board that you ought to be going after. That's no longer before us. The restriction's over. Nobody's challenged it. Now she can't get a job based on a prescribed criterion. And maybe they don't even know she was over age, okay? But they say, oh, she had restrictions. She can't be hired. The system then is discriminating based on age, and she has no recourse. No, but she would. She would against the state licensing board. She goes now and says, you should have lifted those restrictions ten years ago? Yeah. If a state licensing board puts restrictions on you because of age, absolutely they ought to go after the state licensing board. If the employer is just a neutral policy across the board and doesn't even know that someone falls in that category because of a protected category, I don't know how you can hold the employer responsible. A disparate treatment means intentionally discriminating against them. I don't know how you can hold the employer liable. Now you could. The person that made the discriminatory decision with the licensing board. What if they know that some prescribed people are in the category, they just don't know that she is? They know that some people in the past have been given restrictions based on age, and then this old person comes in and says, well, yeah, I have a restriction. Are you with me? It's still, if it's a neutral policy and we apply it across the board, it's not disparate treatment. I understand, but you can keep saying that, but there's sort of a core way in which it's not neutral. The core response would be a disparate impact claim, and they would have to show statistical evidence to support that or to actually go against the agency or entity that actually placed the discriminatory restrictions on them. Thank you. Rebuttal. Thank you. First of all, let me try to clear up this restriction thing. When a nurse enrolls in the care program, there are some that go there knowing they're in trouble before they're caught, before they're disciplined. There are some, like Ellie and Susan, that go there after they've been caught. The program is set up and you have a contract, and it has lots of things to it, most monitoring and things like that. The restriction on their license is they can only practice as long as they are compliant to the care program. Within the care program, they can modify and set the scope of your practice, such as hours and access. So by definition, if you're in care, you have restrictions? Well, you have the restriction that you only are practicing because you are in care. Is that a restriction that that would cause them to reject a person? Apparently so. What are your allegations? You say apparently so. You're alleging that. You have to demonstrate that. Your claim is that if you're in care, you're under restrictions and that they will not hire anyone who was ever in care with a capital K. I think it's agreed that when the question was asked on the application, they both said, yes, we are unrestricted. But the protection that you're claiming your clients have, that they were denied, was protection against discrimination on the basis of drug addiction. And what you have just said indicates that whatever you're in care for, you're going to be restricted. No, ma'am. The only way you can get in care is because of drugs. That's all that's in there. It's either alcohol or chemicals. Nobody else gets in. Other restrictions in other disciplinary cases. The people who go in before they've been caught stealing are under restrictions is what you're saying. The same restriction as if the restriction is you can only practice if you're in the program. That's the restriction. The scope of what you can do changes. Hours, access, and by the time. I'm not asking that. I'm asking whether it's within the restriction for purposes of this employer's policy, according to the evidence. Oh, yes, sir. When they said, my understanding is when they said we're on a restricted license, they were meaning we're in the care program and that's where we're restricted. They hear, well, you're restricted, you're done. And that's what I think Ms. Parks. Does the record contain the evidence that I would want to look at that explains that the only people that CARE deals with are people who are drug or alcohol addicts? Yes, ma'am. I believe that there are exhibits in the briefs that we filed at the district court level. We put the CARE contracts in. And you'll see the governance. The unfortunate part is when you are successful in the CARE program, because there's supposed to be a confidentiality attached to this, as soon as you complete the CARE program, unfortunately the nursing board destroys the records. So if you were stealing drugs and selling them on the street, I'm sorry, I don't mean to be exasperating you, but I'm trying to find the answers to this. If you were stealing drugs and selling them on the street and you didn't use them ever, would you not be eligible for the CARE program? No, ma'am. No, you would not be eligible? I would not be eligible. It is only for those who are chemically dependent. Under your analogy, let's say the nurse. We don't have testimony yet. Judge Batchelder is asking about your client who claims she didn't ever use the drugs. She just stole them. I'm sorry. And she was in CARE, right? Yes, but she did. She did use them? Oh, yes, ma'am. Oh, she didn't testify that she didn't? Well, that's another kind of distortion. Originally, these people are very cautious, and when they're trying to get a job, they don't always tell everything. But by the time Ms. Eubanks got into being the conduit between reporting what she was doing, monitoring to the board, that all came out. And the thing about the stealing part, I guess technically it is, but I've talked to a couple commonwealth attorneys in this very same process. Both of these people testify that they were taking the drugs that were to be wasted. They had a right to them then? I'm sorry, what? I'm just getting, ingesting or pilfering? No, when a patient either expires or is discharged, there are drugs left that don't go back to the pharmacy. Which your clients had no right whatsoever, is that correct? That's correct, that's correct. It's a very simple question. You use the word take. Do you mean steal or do you mean eat? I think it's in this circumstance. I don't think they ate them, I think they ingested them, but I think both. They took and they ingested. Either you take them or however you take them or take them through you. Yes, sir. You don't understand the question? It seems like a simple English question. I can take a chair, I'm not eating. Take has two meanings in English. I take my medicine or I take this piece of paper that isn't mine. I take my medicine, it goes into my body. I take a piece of paper, it doesn't. They physically took the drugs from the hospital. I understand. Then they ingested them at another place. That's what I was trying to say. Does that answer the question? Yes. Thank you, counsel. Your red light has come on, the case will be submitted. There being nothing further to be argued this morning, you may adjourn the court.